IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02094-PAB-CBS

MARC HARRIS KAPLAN,
      Plaintiff,
v.

MICHELLE L. ARCHER, in her official and individual capacity,
KARLA JEAN HANSEN, in her official and individual capacity,
KIRK STEWART SAMELSON, in his official and individual capacity,
HAROLD BUTTS, in his official and individual capacity,
TERRY MAKETA, in his official and individual capacity,
JOHN W. HICKENLOOPER, in his official and individual capacity,
DAN MAY, in his official and individual capacity,
WILLIAM TRUJILLO, in his official and individual capacity, and
JOHN W. SUTHERS, in his official and individual capacity,
      Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

      This civil action comes before the court on: (1) the "Motion to Dismiss First Amended Complaint by Defendants Hickenlooper, Suthers, Trujillo, Samelson, Hansen, Butts, and Archer" ("State Defendants") (filed December 14, 2011) (Doc. # 23); and (2) "Motion to Dismiss Plaintiff's First Amended Civil Complaint . . ." filed by Defendants Maketa and May ("County Defendants") on December 14, 2011 (Doc. # 25).  Pursuant to the Amended Order of Reference dated August 15, 2011 (Doc. # 3) and the memoranda dated December 14, 2011 (Doc. # 24) and December 15, 2011 (Doc. # 26), these matters were referred to the Magistrate Judge.  The court has reviewed the Motions, Mr. Kaplan's "Motion to Strike Defendants['] Motion to Dismiss First Amended Civil Complaint . . ." (filed January 12, 2012) (Doc. # 30) (treated by the court as Mr. Kaplan's Response to Defendants' Motions), Mr. Kaplan's additional submissions (filed on January 23, 2012) (Docs. # 34 and # 37), Defendants' Replies filed on January 23, 2012 (Doc. # 33) and January 26, 2012 (Doc. # 38), and Mr. Kaplan's "Reply to Defendants['] Reply . . . " (filed February 23, 2012) (Doc. # 40). The court has also reviewed the pleadings, the entire case file, the proceedings held on

October 21, 2011 (*see* Courtroom Minutes/Minute Order (Doc. # 28)),  and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Mr. Kaplan brings this lawsuit in his *pro se* capacity.  Mr. Kaplan sues all of the Defendants in both their individual and official capacities.  (*See* "First Amended Civil Complaint" ("FAC") (Doc. # 19) at 1, 9 of 43).  Mr. Kaplan alleges that on March 4, 2011 in El Paso County, Colorado, Defendant Archer, an employee of the Colorado State Patrol, arrested him without probable cause.  (*See id.* at 10-11 of 43).  Mr. Kaplan sues Defendant Butts as a supervisor of the Colorado State Patrol, Defendant Trujillo as a Magistrate of the El Paso County Court, Defendant Hansen as a Judge of the El Paso County Court, Defendant Samelson as Chief Judge of the El Paso County Court, Defendant Maketa as a supervisor of the El Paso County Sheriff's Office, Defendant Hickenlooper as the Chief Executive Officer of the State of Colorado, Defendant May as the District Attorney of El Paso County, and Defendant Suthers as the Attorney General of the State of Colorado.  (*See id.* at 11-19 of 43).  Mr. Kaplan alleges that in March of 2011, he mailed or filed through court filings Notices "of Status and Constructive Notice and Challenge to Authority ('Notices A & C')" to Defendants Archer, Hickenlooper, Buts, Trujillo, May and Maketa.  (*See id.* at 19-22 of 43; Doc. # 38-1).  Mr. Kaplan seeks injunctive, declaratory, and monetary relief.  (*See* Doc. # 19 at 39-41 of 43).

Defendants move to dismiss the FAC pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6).  Because Mr. Kaplan appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a court may not assume that a plaintiff can prove facts that have not

been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). While *pro se* pleadings should be construed liberally, that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (pro se litigant required to follow the rules of federal and appellate procedure); *In re "Santa Barbara Like It Is Today" Copyright Infringement Litigation*, 94 F.R.D. 105, 108 (D. Nev. 1982) ("there is a limit to the indulgence of the law and even a pro se complaint is subject to dismissal if the pleading fails to reasonably inform the adverse party of the basis for the cause of action") (citation omitted).

## II.   Factual and Procedural Background

On March 4, 2011, Defendant Archer, a Colorado State Patrol Trooper, arrested Mr. Kaplan for, *inter alia*, driving under the influence of alcohol in violation of Colo. Rev. Stat. § 42-4-1301(a), prohibited use of a weapon in violation of Colo. Rev. Stat. § 18-12-106(1)(d), and resisting arrest in violation of Colo. Rev. Stat. § 18-8-103, all misdemeanors under Colorado law. (*See* Exhibit A to State Defendants' Motion (Doc. # 23-1) at 1-2 of 16).[1] On September 21, 2011, a jury found Mr. Kaplan guilty of all charges in El Paso County Case Number 2011M001544 (the "Criminal Case"). (*See* Exhibit D to State Defendants' Motion (Doc. # 23-1) at 11-13 of 16). Defendant Hansen, the judge in the Criminal Case, sentenced Mr. Kaplan to 180 days in jail and fined him $1,308.00. (*See id.*).

---

[1]   The court may take judicial notice of documents in the public record. *State Farm Mutual Automobile Insurance Co. v. Boellstorff*, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008).

While the Criminal Case was pending, Mr. Kaplan filed three petitions for writ of habeas corpus in state court in case numbers 11cv315, 11cv174, and 11SA223, all of which were dismissed.  (*See* Exhibit B to State Defendants' Motion (Doc. # 23-1) at 4-9 of 16).  Mr. Kaplan also filed two suits in the U.S. District Court for the District of Colorado.  One suit is the instant action.  The other suit sought to remove the Criminal Case from El Paso County Court to federal court.  On August 12, 2001, District Judge Brimmer ordered the suit dismissed and directed the Clerk of the Court to "file this matter as a criminal case."  (*See People v. Kaplan*, No. 11-cv-02093-PAB (Exhibit C to State Defendants' Motion (Doc. # 23-1) at 10 of 16).  On August 12, 2011, Judge Brimmer "summarily remanded" the case "to the County Court of El Paso County, Colorado, where it is filed as Case No. 2011M1544."  (*See People v. Kaplan*, No. 11-cv-02093-PAB, at Doc. # 2).

On September 29, 2011, Mr. Kaplan petitioned the Colorado Supreme Court for a writ of habeas corpus in case number 11SA274.  The Supreme Court denied the petition on October 4, 2011.  (*See* Exhibit E to State Defendants' Motion (Doc. # 23-1) at 14 of 16).  On October 6, 2011, Mr. Kaplan filed a notice of appeal of the Criminal Case.  (*See* El Paso County Court Case Number 11cv358 (Exhibit  to State Defendants' Motion (Doc. # 23-1) at 16 of 16))).

III.    Analysis

Mr. Kaplan alleges that this lawsuit is brought pursuant to "28 U.S.C. §§ 2201(a), 2202, 2283, 1331, 1343(3) and 1651," as well as 18 U.S.C. §§ 3332(a), 1961-1964, 1957(a), and 666.  (*See* FAC (Doc. # 19) at 4-6 of 43).  It appears that Mr. Kaplan is alleging that his arrest was without probable cause and that his subsequent prosecution was part of a conspiracy by the Defendants, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and constituting "Depr[i]vation of Liberties."  (*See* Doc. # 19 at 26-34 of 43).

A.      Fed. R. Civ. P. 8

Defendants argue that the FAC should be dismissed for failure to meet the pleading requirements of Rule 8.  Fed. R. Civ. P. 8(a) states that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) 9internal quotation marks and citation omitted). *See also Blinder & Robinson Co. v. SEC*, 748 F.2d 1415, 1419 (10th Cir. 1984) ("a plaintiff must state a compensable claim for relief that details the facts forming the basis for the claim").  The information provided by the pleader must be adequate to set forth the basis of his claim "as distinguished from a bare averment that he wants relief and is entitled to it." *See* 5 *Federal Practice and Procedure* Civ. 3d § 1215.  When a complaint does not comply with Rule 8, the district court has the authority to dismiss the complaint.  *See Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1161 (10th Cir. 2007) ("[T]o be sure, a failure to satisfy Rule 8 can supply a basis for dismissal: Rule 41(b) specifically authorizes a district court to dismiss an action for failing to comply with any aspect of the Federal Rules of Civil Procedure.").  "A dismissal without prejudice under Rule 8 is within the sound discretion of the trial court." *Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992) (citations omitted).

The FAC is 43 pages long and consists of 89 Paragraphs with numerous subparts. Mr. Kaplan appears to allege that his prosecution was part of a conspiracy by the Defendants in concert with various "secret societies" that include the United Nations, World Bank, and International Monetary Fund.  (*See* FAC at ¶ 38, ¶ 70).  Mr. Kaplan seems to allege that the aim of this conspiracy is "BRAINWASHING THE PEOPLE" and "has taken and continues to take place from at least 1861 through the actual writing of this complaint." (*See id*. at Part X, ¶ 68).  Mr. Kaplan requests relief pursuant to "any Act of Congress."  (*See id.* at ¶ 45).  Mr. Kaplan seeks, among other things, $1,800,000.00 for each wrongful act of the Defendants,

payment to be made in one-dollar coins.  (*See id.* at ¶¶ 81, 89).  Mr. Kaplan demands a jury trial and that "[j]ury members shall exclude all United States citizens, foreign nationals, persons and other than men or women dwelling within the de jure country and territory of Colorado state who have not expatriated from American Citizenship."  (*See id.* at ¶ 75).

Mr. Kaplan sets forth a rambling narration of disjointed allegations, bizarre accusations, and seemingly unrelated conclusory assertions of legal violations.  Mr. Kaplan recites purported laws and publications that do not clarify the substance of the FAC or satisfy the pleading requirements set forth in the Federal Rules of Civil Procedure.  *See Green v. Com. of Massachusetts*, 108 F.R.D. 217, 218 (D. Mass. 1985) (finding that dismissal is appropriate for "complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim").  The FAC does not provide sufficient notice to each of the Defendants of the factual grounds for specific claims.

Mr. Kaplan does not cite adequate legal authority for his theories, and the court "will not root about in the case law seeking support" for them.  *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 n. 16 (5th Cir. 1994).  *See also Glenn v. First National Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) (court "will not search through the several paragraphs of the plaintiffs' 'Introductory Allegations' and attempt to match the factual assertions with the elements of all subsections of the RICO statute to determine if the complaint states a claim for relief" . . . or "require the defendants to 'piece' together the plaintiffs' complaint");  5 *Federal Practice and Procedure Civ. 3d* § 1281("[u]necessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage").  In sum, the FAC may properly be dismissed without prejudice for failure to comply with Rule 8(a).

B.      Fed. R. Civ. P. 12(b)(1)

Defendants assert that the court lacks subject matter jurisdiction over the FAC based

on Eleventh Amendment immunity and the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971).  Defendants' assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter in the FAC.  *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) ("Once effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (original emphasis omitted)).  Defendants' assertion of abstention under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971) constitutes a factual challenge to the court's subject matter jurisdiction.  *See D.L. v. Unified School District No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) ("Younger abstention is jurisdictional.") (citation omitted).  *See also Beres v. Village of Huntley, Illinois*, 824 F. Supp. 763, 766 (N.D.Ill.1992) ("a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) appears to be an appropriate method for raising the issue of abstention" (citation omitted));  *Miller Brewing Co. v. Ace U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E.D. Wis. 2005) (considering a request for abstention as a motion under Fed.R.Civ.P. 12(b)(1) because it "raises the question of whether a court should exercise subject matter jurisdiction" (citation omitted)).

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  *See also Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) ("Mere conclusory allegations of jurisdiction are not enough; the party pleading jurisdiction must allege in his pleading the facts essential to show jurisdiction.") (internal quotation marks and citations omitted).  As the party asserting jurisdiction, Mr. Kaplan bears the burden of establishing that this court has

jurisdiction to hear his claims.  *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304,1308-09 (D. Colo. 2001) (citation omitted).

       1.      Claims against Defendants in their Official Capacities

Mr. Kaplan sues Defendants in both their individual and official capacities.  (*See* FAC (Doc. # 19) at 1, 9 of 43).  To the extent that Mr. Kaplan is suing Defendants in their official capacities, he is actually attempting to impose liability on their employers.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state);  *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents").  The Eleventh Amendment provides for the sovereign immunity of a state or state actors sued in federal court.  *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir.1998), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the real party in interest is the state, and the suit is barred by the Eleventh Amendment."  *Id.*  (internal quotation marks and citation omitted).  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).

The Colorado State Patrol is a state agency.  *See* Colo. Rev. Stat. § 24-33.5-201 ("Colorado state patrol created.").  Therefore, Mr. Kaplan's claims against Defendants Archer and Butts in their official capacities, as employees of the Colorado State Patrol, are barred by Eleventh Amendment immunity.  *Mahan v. Huber*, No. 09-cv-00098-PAB-BNB, 2010 WL 749807, at * 5 (D. Colo. March 2, 2010).  Defendant District Attorney Dan May in his official capacity is a state officer "with the power to assert the defense of sovereign immunity under the Eleventh Amendment."  *Bragg v. Office of the Dist. Atty., Thirteenth Judicial District*, 704 F. Supp. 2d 1032, 1065-66 (D. Colo. 2009).  *See also Romero v. Boulder County DA's Office*, No. 03-1382, 87 Fed. Appx. 696, 698 (10th Cir. Jan. 22, 2004) ("the district attorney is

a state officer under Colorado law."); *Musick v. Pickering*, No. 05CV01361REBOES, 2005 WL 2739028, at * 2 (D. Colo. Oct. 24, 2005) ("As an initial matter, it is abundantly clear that the District Attorney's Office and [Deputy District Attorney] in his official capacity enjoy Eleventh Amendment immunity from plaintiff's federal claims.").[2]  As the Attorney General of Colorado, Defendant Suthers serves in the state's executive department. Colo. Const. art. IV, § 1.  His office is an arm of the State and he is entitled to Eleventh Amendment immunity. *See Meade*, 841 F.2d at 1525 (citation omitted).  Defendant Governor Hickenlooper, as the "supreme executive" of the state, is also entitled to Eleventh Amendment immunity.  *See* Colo. Const. art. IV, § 2.  The judicial power of the state is vested in, *inter alia*, the district courts and the county courts.  Colo. Const. art. VI, § 1.  Thus, Defendants Magistrate Trujillo, Judge Hansen, and Chief Judge Samelson are entitled to Eleventh Amendment immunity. To the extent that Mr. Kaplan is suing Defendants who are state employees in their official capacities for money damages, such claims are properly dismissed without prejudice as barred by the Eleventh Amendment.[3]

### 2.     *Younger* Abstention

Defendants argue that the court should invoke the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971).  The doctrine of abstention provides that a federal court may properly abstain from exercising its jurisdictional powers when to do so would impermissibly interfere with ongoing state proceedings.  *See Younger*, 401 U.S. at 37.  *See also D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1227-28 (10th Cir. 2004) ("Even when a federal court would otherwise have jurisdiction to hear a claim, the court may be obliged to abstain when a federal-court judgment on the claim would interfere with an ongoing state

---

[2]    Copies of unpublished cases cited are attached to this Recommendation.

[3]    Eleventh Amendment immunity does not appear to apply to Defendant Maketa, as "chief supervisor of the El Paso County Sheriff's Office."  *See Meade*, 841 F.2d at 1529 n. 17 ("Eleventh Amendment immunity extends only to *state* officials, and does not protect county or local officials.") (emphasis in original).

proceeding implicating important state interests.") (citations omitted). *Younger* is based less on judicial economy than on a recognition that state courts are as competent as federal courts to adjudicate constitutional questions. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001) ("*Younger* abstention is predicated on the desire to permit state courts to try state cases free from interference by federal courts.") (internal quotation marks and citation omitted).

"In determining whether *Younger* abstention is appropriate, a court considers whether: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Crown Point I, LLC v. Intermountain Rural Electric Assn.*, 187 F.3d 1160, 1163 (10th Cir. 1999) (internal quotation marks and citation omitted). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Id.* (citation omitted).

The first condition, requiring an ongoing state proceeding, is met because Mr. Kaplan's appeal in state court was pending at the time this civil action was filed and he has not alleged that his appeal is concluded. The second requirement under *Younger* is that the state court provides an adequate forum to hear the claims raised in the federal complaint. As there is no allegation that the state court is not an adequate forum to hear Mr. Kaplan's claims and no reason appears why Mr. Kaplan's contentions here could not be interposed as defenses in state court, the second condition of *Younger* abstention is met. *See Lebbos v. Judges of Superior Court*, 883 F.2d 810, 815 (9th Cir. 1989) (opportunity to raise federal contentions as defenses is sufficient). The third condition, requiring that important state interests are involved in the state proceeding, is also met. *See Buck v. Myers*, No. 06-4236, 244 Fed. Appx. 193, 197 (10th Cir. July 10, 2007) (state has an important interest in its criminal proceedings). Mr. Kaplan seeks relief that would void his state criminal conviction.

(*See, e.g.,* Doc. # 19 at 39-41 of 43).  "The classic example of" the *Younger* doctrine "is a federal suit to enjoin a pending state criminal proceeding."  *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d at 1227-28 (citations omitted).  The three conditions of the Younger abstention doctrine are met in this case.

The relief Mr. Kaplan seeks in federal court includes injunctive relief, declaratory relief, and damages for misconduct in the underlying criminal case.  While the original *Younger* holding was limited to the proposition that injunctive relief was subject to abstention, the Tenth Circuit has expanded the doctrine to include declaratory and monetary relief as well: "The Supreme Court [has] held the same equitable principles relevant to the propriety of an injunction [apply] to . . . a declaratory judgment. . . .  [W]here an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well."  *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d at 1228 (internal quotation marks and citation omitted).  *See also Parkhurst v. State of Wyoming*, 641 F.2d 775, 777 (10th Cir. 1981) (claim for money damages "would necessarily call into question the validity of the state conviction," and "frustrate the spirit" of *Younger*);  *Landrigan v. Warwick*, 628 F.2d 736, 743 (1st Cir. 1980) (effect of successful § 1983 action for damages would in practical terms be much the same as a declaratory judgment and would undermine criminal charge in state court action and therefore *Younger* abstention required);  *Flanders v. Snyder Bromley*, No. 09-cv-01623-CMA-KMT, 2010 WL 2650028, at * 4 (D. Colo. June 30, 2010) ("the Tenth Circuit has held that abstention is proper in damages suits because the federal court would still need to determine whether a plaintiff's constitutional rights were violated, thus, having the same practical effect on the state proceeding as the injunctive relief barred in *Younger*.") (citation omitted).

Because the three conditions of *Younger* abstention are met, and abstention applies to all forms of relief Mr. Kaplan is seeking, the court properly must abstain from hearing Mr. Kaplan's claims.  This civil action is properly dismissed without prejudice based on the *Younger* abstention doctrine.  *See Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("*Younger v.*

*Harris* contemplates the outright dismissal of the federal suit . . .").  The court need not go beyond addressing the *Younger* abstention doctrine because the court does not have subject matter jurisdiction over Mr. Kaplan's claims at this time.  Nevertheless, the court concludes that even if it did have jurisdiction, Mr. Kaplan's claims are properly dismissed for additional reasons.

C.      Fed. R. Civ. P. 12(b)(6)

        Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S.Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id*.  "Rule 8(a)'s mandate, that plaintiffs 'provide a short and plain statement of the claim showing that the pleader is entitled to relief,' has been incorporated into . . . the . . . 12(b)(6) inquir[y]."  *U.S. ex rel Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).  The "requirement of plausibility serves . . . to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

        In addition to monetary damages, Mr. Kaplan seeks declaratory and injunctive relief. (*See* Doc. # 19 at 39-41 of 43).  Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).  The Eleventh Amendment also does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985).  To the extent that Mr. Kaplan is suing Defendants in their individual capacities, personal capacity suits seek to impose

personal liability upon a government official for actions he or she takes. *Graham*, 473 U.S. at 165-67. The court proceeds to evaluate whether Mr. Kaplan states any claim against Defendants in their official capacities for injunctive relief or in their individual capacities.

      1.     Mr. Kaplan's "Count Two Cause of Action – R.I.C.O." and "Count Three Cause of Action – The Predicate Acts"

Mr. Kaplan alleges violation of RICO. (*See* Doc. # 19 at 22-23, 27-34 of 43). "Congress enacted RICO, . . . in response to increasing concern regarding the expanding power of organized crime." *Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*, No. 08-CV-0325-MJR, 2009 WL 1684464, at * 5 (S.D.Ill. June 16, 2009) (citation omitted). RICO "originally was intended to attack the infiltration of legitimate businesses by organized crime, . . . ." *Id*. (citation omitted). The RICO statute, 18 U.S.C. §§ 1961-1968, "allows private parties to bring civil suits for treble damages." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256-57 (10th Cir. 2003) (citing 18 U.S.C. § 1964(c) (allowing for a private civil action for treble damages and attorney fees for "any person injured in his business or property by reason of a violation of § 1962 of this chapter . . . .")). Section 1962 defines the criminal violations necessary for the recovery of civil damages under § 1964(c). "In order to bring a RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (internal quotation marks omitted). Section 1962 of RICO prohibits a person from engaging in four types of conduct:

    (1) § 1962(a): Using or investing any money received from a pattern of racketeering activity to acquire an interest in, establish or operate an enterprise;

    (2) § 1962(b): Acquiring or maintaining an interest in or control of an enterprise through a pattern of racketeering activity;

    (3) § 1962(c): If employed or associated with an enterprise, conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity; and

    (4) § 1962(d): Conspiracy to violate any of the above.

*Jay E. Hayden Foundation*, 2009 WL 1684464, at * 5 (citation omitted).

Mr. Kaplan alleges that Defendants are "operating the courts as a racketeering enterprise."  (*See* Doc. # 19 at 2 of 43;  *see also* 5 of 42 ¶f ("this claim arises from the pattern of multiple predicate acts perpetrated by Defendants over decades.").  "The R.I.C.O. enterprise described herein consists of the Defendants as a matter of policy and ongoing business practice to further their individual and collective aims adverti[s]ed the use and deception of the people with the names and persona of de jure public organizations as means of profit in the perpetration of the above listed frauds and obstructions of justice [sic]." (Doc. # 19 at 29 of 43; *see also* 27-34 of 43).

     a.     Predicate Acts for Pattern of Racketeering Activity

RICO makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs" through the commission of two or more statutorily defined crimes – which RICO calls "a pattern of racketeering activity."  18 U.S.C. § 1962(c). "Racketeering activity" encompasses a number of crimes identified in the statute. 18 U.S.C. § 1961(1). "These underlying acts are referred to as predicate acts, because they form the basis for liability under RICO."  *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (internal quotation marks and citation omitted).  *See also Harvey v. Harvey*, 931 F. Supp. 127, 130 (D. Conn. 1996) ("The offenses which may serve as predicate acts for a RICO claim are listed in 18 U.S.C. § 1961.  This list is exclusive." (citing *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 586 (S.D.N.Y. 1995) ("RICO standing may only be founded upon injury from § 1961 predicate acts . . . .")). "In order to survive a motion to dismiss in a civil RICO case, a plaintiff must show a pattern of racketeering activity by alleging that the defendants committed two qualifying predicate acts." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004) (internal quotation marks and citation omitted).  Mr. Kaplan generally asserts predicate acts of "extortion, obstruction of justice, mail fraud and wire fraud."  (*See* Doc. # 19 at 33 of 43 ("The predicated acts of extortion, obstruction of justice, mail fraud, and wire fraud are numerous and can be found

within this case.")).

          i.    Mail and Wire Fraud

Mr. Kaplan's FAC alleges that Defendants engaged in mail and wire fraud as predicate acts for his RICO claim. (*See* Doc. # 19 at 29-30 of 43). "The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (citation omitted). *See also BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (same) (internal quotation marks and citation omitted). "In addition, a plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent." *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 393 (S.D.N.Y. 2000) (citation omitted).

To establish wire fraud a plaintiff must show: (1) a scheme or artifice to defraud or obtain money by false pretenses, representations or promises; and (2) use of interstate wire communications to facilitate the scheme. *United States v. Drake*, 932 F.2d 861, 863 (10th Cir. 1991). A plaintiff must allege the number of wires, the precise dates, and how they further the scheme. *Weiszmann v. Kirkland and Ellis*, 732 F. Supp. 1540, 1546 (D. Colo. 1990). The defendant must participate in each with the specific intent to defraud. *United States v. Washita Constr. Co.*, 789 F.2d 809, 817 (10th Cir. 1986).

"Rule 9(b) is applicable to RICO predicate acts based on fraud." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989). *See also Tal*, 453 F.3d at 1263 (citations omitted) (The particularity requirement of Rule 9(b) applies to civil RICO claims for which mail fraud is a predicate illegal act.). Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To meet the Rule 9(b) standard, a plaintiff must identify the

circumstances constituting the fraud.  *Broadview Financial, Inc. v. Entech Management Services Corp.*, 859 F. Supp. 444, 449 (D. Colo. 1994) (citation omitted).  Specifically, a plaintiff must (1) identify the particular individuals with whom he dealt; (2) designate the occasion on which the fraudulent statements were made, and by whom; and (3) describe what misstatements and half-truths were expressed and how.  *Broadview Financial, Inc.*, 859 F. Supp. at 449. *See also Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002) ("The complaint must contain allegations of the specific representations alleged to be fraudulent, where and when the statements were made, the particular defendant making the misrepresentations, and what was false about them") (citation omitted)*; Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1476 (D. Colo. 1995)  (in pleading a claim under RICO, plaintiffs "must set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof") (internal quotation marks and citation omitted); *Weizmann v. Kirkland and Ellis*, 732 F. Supp. at 1546 ("In order to satisfy the particularity requirements of Rule 9(b) where, as here, mail fraud is alleged as a predicate act of a RICO claim, "the plaintiff must specify the time, place, and content of the alleged false representation and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transactions furthered the fraudulent scheme.").  Reliance is also an element of a civil RICO claim.  *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 559 (S.D.N.Y. 2005) (in order to establish the required causal connection in the context of an alleged RICO violation based on an act of mail fraud, plaintiffs must demonstrate that they relied on the alleged misrepresentations) (citations omitted); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001) (in civil RICO claims in which fraud is alleged as a predicate act, reliance on the fraud must be shown) (citations omitted).

Mr. Kaplan has not adequately pled the elements of mail or wire fraud.  Mr. Kaplan states the allegations in the most vague and conclusory manner.  Mr. Kaplan alleges merely that Defendants "used the United States Postal Service mails' and "used the telephone and

electronic means . . . as means of giving semblance of authenticity in the perpetration of the above listed frauds and obstructions of justice." (Doc. # 19 at 29-30 of 43). The FAC lacks specific allegations regarding the time, place, and content of the alleged fraud. Mr. Kaplan has not alleged what documents or communications were sent, how they were sent, to whom they were sent, the contents of the documents or communications, or how the documents or communications were fraudulent. *See Kashelkar*, 97 F. Supp. 2d at 393 (allegations giving no particulars about what were the alleged statements, who made them, when and where they were made, what role they played in the scheme, or any facts which give rise to an inference of fraudulent intent" failed to satisfy pleading requirements of a RICO claim) (citation omitted). Mail fraud is not committed simply by sending false statements through the mail. Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses. *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir. 1989). General allegations such as that transfers of funds were accomplished through the use of the mail or that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b). *In Re Sattler's*, 73 B.R. at 786 (citation omitted). There are no allegations of fraud against specific Defendants. This is insufficient to meet the requirements that a RICO claim based on fraud be stated with particularly as to each defendant. The FAC does not satisfy the requirements for pleading mail or wire fraud under RICO.

ii.     Extortion and Obstruction of Justice

Additional predicate acts identified by the RICO statute include extortion under state law or extortion or attempted extortion under the Hobbs Act, 18 U.S.C. § 1951. *See* 18 U.S.C. § 1961 ("'racketeering activity' means . . . any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year; [and] any act which is indictable under . . . title 18, United States Code . . . section 1951. . . ."). "Extortion" is defined by the Hobbs Act as "the obtaining of property from

another, with his consent, induced by wrongful use of actual or threatened force, violence or fear or under color of official right." 18 U.S.C. § 1951(b)(2).  The definition is substantially the same under Colorado law.  *See* Colo Rev. Stat. § 18-3-207.

Mr. Kaplan's allegations fail to support a claim under the Hobbs Act for extortion because they fail to indicate which of the Defendants, if any, committed extortion.  The FAC contains no allegations that Defendants obtained property from Mr. Kaplan "by wrongful use of actual or threatened force, violence, or fear, or under color of official right," 18 U.S.C. § 1951, or made "a substantial threat" of any kind, Colo. Rev. Stat. § 18-3-207(1)(a). "Pleadings which fail to indicate the persons, dates and methods of extortion, . . . are plainly inadequate to support a civil RICO predicate act."  *Rini v. Zwirn*, 886 F. Supp. 270, 299 (E.D.N.Y. 1995) (citations omitted).

To the extent that Mr. Kaplan may be alleging that Defendants' involvement in his criminal prosecution for violation of Colorado law was extortionate, any such allegation is unavailing.  The essence of Mr. Kaplan's claims seems to be that Defendants were involved with the alleged unlawful prosecution of him in state court.  This conduct may more properly be characterized as malicious prosecution, not extortion, and malicious prosecution is not a RICO predicate act. *See Levitan v. Patti*, No. 3:09cv321/MCR/MD, 2011 WL 1299947, at * 16 (N.D. Fla. Feb. 8, 2011) (counts of wire fraud and mail fraud to bring about false criminal charges dismissed with prejudice as to all defendants) (citations omitted).  *See also Auburn Medical Center, Inc. v. Andrus*, 9 F. Supp. 2d 1291, 1298-99 (M.D. Ala. 1998) ("Several district courts have specifically found that claims for malicious prosecution do not constitute predicate acts for purposes of sustaining a RICO action.") (citations omitted).

Predicate acts also include five "obstruction of justice" offenses.  *See* 18 U.S.C. § 1961 ("'racketeering activity' means . . . . any act which is indictable under . . . title 18 United States Code . . . section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations, section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim or an

informant), and section 1513 (relating to retaliating against a witness, victim or an informant).").  Mr. Kaplan alleges obstruction of justice in violation of 18 U.S.C. § 1503, which is defined as influencing or injuring officers or jurors of United States courts.  Mr. Kaplan fails to plead with particularity the RICO predicate act of obstruction of justice in violation of 18 U.S.C. § 1503.  There is no allegation regarding any officer or juror of a court of the United States and no identification of the individual role of any of the Defendants.

For failure to state a predicate act, Mr. Kaplan's RICO claim is properly dismissed.[4]


b.      RICO Enterprise

RICO broadly defines the term "enterprise" to include "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Mr. Kaplan must plausibly plead that all the defendants participated in the affairs of an "enterprise," as defined in 18 U .S.C. § 1961(c).  *See Seidl v. Greentree Mortgage Co.*, 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998) ("To allege an enterprise within the meaning of RICO, there must be a group of persons associated together for a common purpose of engaging in a course of conduct . . . [It is] proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.") (internal quotation marks and citation omitted). "[A]t least some proof of ongoing association and a shared purpose is needed to adequately plead and prove a RICO enterprise." *National Group for Communications and Computers, Ltd. v. Lucent Technologies, Inc.*, 420 F. Supp. 2d 253, 270-71 (S.D.N.Y. 2006) (citation omitted).

Mr. Kaplan alleges that "[p]ortions of these enterprises are done through:

    a.       private banking with a fiat currency credit/debit system which is inflated
    and deflated by electronic means at the whim of international bankers stealing
    the labor of the People for tyrannical internationalists; and

---

[4]     While Mr. Kaplan includes "Deprivation of Procedural Due Process" as part of "Count Two Cause of Action - R.I.C.O." (*see* Doc. # 19 at 30 of 43), a procedural due process violation is not a predicate act under RICO.

b.      taking title to every identifiable real asset or household item of value returning only certificates of title for use and possession of the people, then securitizing the assets as collateral for debt in above banking fraud (b): and,

c.      promulgation of codes and regulations outside of Law to facilitate the above taking of the labor (b) of the people including incarceration and securitization of bonds, court cases and fees in the above banking scheme (a) expatriating the People to the low status of Person for financial gain; and,

d.      using the military to infiltrate the state counties which are the last bastion of Land outside of admiralty, maritime jurisdiction including Constitutional Sheriff Offices which are relegated to agents of foreign banking (a) powers as brute squads to force subservience to the legal corporations doing business as centers of profit enforcing codes and regulations (c) in the taking of the Peoples property (b); and,

e.      once the people are expatriated through color-of-law, adhesion contracts, silent extrajudicial notice, ultra-virus contracts, fraud, miss-education [sic] threat, duress, corrosion and other means, by the government actors unknowingly as one of the unwitting or knowingly as a sycophant to the internationalists (a), and forced to trade in slave script currencies (b) never Paid for their Labor, with the task master (d) enforcing slave rules (c); and,

f.      when one of the People such as the Plaintiff, a Man on the Land, becomes aware of the unlawful taking of Labor, Liberties and the Life Blood of the Creator against the Law of the Land, the behemoth corporate government organization (Defendants) as policy through the above mechanics relegate the People to the status of Person which is a corporate fiction as a wholly owned economic slave status (e) of involuntary servitude.

(Doc. # 19 at 31-32 of 43).  These allegations do not plausibly state "that the individual defendants had acquired or maintained control of [an enterprise] through a pattern of racketeering."  *Protter v. Nathan's Famous Systems, Inc.*, 925 F. Supp. 947, 955 (E.D.N.Y. 1996).  Mr. Kaplan's allegations do not support the existence of an enterprise with shared or common purposes, continuity of structure and personnel, and a structure distinct from that inherent in the alleged pattern of racketeering activity.  *See United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003) (requiring that the enterprise be an ongoing organization with a framework for making or carrying out decisions, that the various associates function as a continuing unit, and that the enterprise is separate and apart from the pattern of racketeering activity) (citation omitted).  Mr. Kaplan's allegations fail to state that, in the absence of the alleged unlawful prosecution against him, there would have been any association-in-fact at all among the Defendants.  *See Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir.1997) ("In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise

would still exist were the predicate acts removed from the equation.").  For failure to adequately allege an enterprise, Mr. Kaplan's RICO claims are properly dismissed.

c.     Pattern of Racketeering Activity

RICO prohibits any person employed by or associated with any enterprise engaged in activities affecting interstate commerce to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). A "pattern of racketeering activity" must include "at least two acts of racketeering activity" in a ten-year period.  18 U.S.C. § 1961(5).  Furthermore, to show a pattern of racketeering activity, a RICO plaintiff must also satisfy two additional elements: "a relationship between the predicates" and "the threat of continuing activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  "[A] complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct - one indicating the threat of continuing criminal activity - reasonably may be inferred."  *Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990) (citations omitted).  *See also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) ("to state a RICO claim there must be: (1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*") (emphasis in original) (internal quotation marks and citation omitted).

Mr. Kaplan alleges that "[t]he pattern of racketeering activity appears to be comprised of hundreds of thousands of predicated acts of extortion or rights and obstruction of justice in violation of 18 U.S.C. § 1503."  (*See* Doc. # 19 at 30 of 43).  The court has determined, above, that Mr. Kaplan has not sufficiently alleged predicate acts of extortion or obstruction of justice.  Further, the FAC does not contain allegations that there was a common purpose among the Defendants or any sort of decision-making mechanism for conducting an enterprise's affairs on a continuing basis.  Mr. Kaplan fails to set forth facts to support a claim that all of the Defendants were working with one another or associated together in a single

ongoing organization or continuing unit where members worked together to accomplish a common purpose.  At best, the FAC alleges that Defendants were involved in Mr. Kaplan's criminal prosecution, which he alleges was unlawful.  Even several related predicate acts do not establish a pattern when they are part of an alleged single effort to effectuate one wrong.  *See Tal*, 453 F.3d at 1268 (alleged "award of one, albeit large, development contract " did not  "constitute a distinct threat of long-term racketeering activity.") (internal quotation marks and citation omitted).  Because the FAC does not adequately allege a "pattern" of racketeering activity, Mr. Kaplan's RICO claims are properly dismissed.

> 2.    Mr. Kaplan's "Count One Cause of Action – Depr[i]vation of Liberties"

Mr. Kaplan also alleges a claim for "[d]epr[i]vation of liberties," including violation of his rights under the Second, Fourth, Sixth, Seventh, Ninth, and Thirteenth Amendments to the U.S. Constitution.  (*See* Doc. # 19 at 26-27 of 43). While Mr. Kaplan does not allege jurisdiction pursuant to 42 U.S.C. § 1983, a plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and laws" by a person or entity, . . .  acting under the color of state law.  42 U.S.C. § 1983; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978).  The phrase "and laws" refers generally to all "federal statutory as well as constitutional law.  *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).

"The Supreme Court has recognized only the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel" as rights protected against private encroachment.  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotation marks and citations omitted).  Mr. Kaplan's claims do not regard the right against involuntary servitude.  "The federal guarantee of interstate travel . . . protects interstate travelers against two sets of burdens: the erection of actual barriers to interstate movement and being treated differently from intrastate travelers."  *United States v. Eckhart*, 569 F.3d 1263, 1272 (10th Cir. 2009) (internal quotation marks and

citation omitted).  Neither set of burdens is alleged here.  To the extent that Mr. Kaplan brings a Thirteenth Amendment claim, it is properly dismissed.

To the extent that Mr. Kaplan brings his claims pursuant to the Ninth Amendment (*see* Doc. # 19 at 27 of 43), the Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.  "[T]he Ninth Amendment has not been judged to be a source of individual rights for purposes of stating a claim."  *Zhao v. United States*, 91 Fed. Cl. 95, 99 n.4 (Fed. Cl. 2010) (citations omitted).  *See also Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth Amendment is not an independent source of individual rights. . . ."); *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) (Ninth Amendment does not confer substantive rights other than "those conferred by other portions of our governing law").  As the Ninth Amendment does not protect against any of the alleged violations described in the FAC, Mr. Kaplan fails to state a claim pursuant to the Ninth Amendment.

To the extent that Mr. Kaplan alleges violation of his Sixth Amendment rights, he has not pled a plausible Sixth Amendment claim.  Mr. Kaplan does not adequately allege any basis for his Sixth Amendment claim, *i.e.*, right to criminal counsel, Confrontation Clause, speedy trial, etc.  Mr. Kaplan has not alleged any facts suggesting that Defendants' conduct violated the Sixth Amendment's requirements.  As Mr. Kaplan's allegations do not provide any facts to support a Sixth Amendment violation, his Sixth Amendment claim is properly dismissed.

To the extent that Mr. Kaplan alleges violation of his Seventh Amendment right to a jury trial, he alleges no facts to support such a claim.  The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.  Mr. Kaplan alleges that he was tried and convicted by a jury in state court.  The Seventh Amendment "governs proceedings in federal court, but not in state court."  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 418 (1996).  Mr. Kaplan fails to state a claim for violation of the Seventh

Amendment.

Mr. Kaplan alleges a violation of the Fourth Amendment.  Mr. Kaplan seems to allege that misconduct by Defendants resulted in his false arrest, as well as his unconstitutional prosecution, conviction and imprisonment.  (*See* Doc. # 19 at 10-19 of 43).  First, Mr. Kaplan's claim challenging his arrest and subsequent conviction is barred by the favorable termination rule first announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-7.  Mr. Kaplan does not allege that he obtained a favorable termination of his conviction.  Mr. Kaplan's Fourth Amendment claim is necessarily barred by *Heck*, as such suit would constitute an impermissible collateral attack on the validity of his conviction.  *See Duamutef v. Morris*, 956 F. Supp. 1112 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, First Amendment retaliation, and equal protection for failure to satisfy *Heck*);  *Burden v. Wood*, No. 05-1530, 200 Fed. Appx. 806, 807, 2006 WL 2949141, at *1 (10th Cir. Oct. 17, 2006) (false arrest claim, in light of a conviction that has not been overturned on direct appeal or otherwise rendered invalid, cannot be maintained in light of *Heck*);  *Wheeler v. Scarafiotti*, Nos. 02-2297, 02-2345, 85 Fed. Appx. 696, 2004 WL 37976, at * 4 (10th Cir. Jan. 8, 2004) ("attempt to convince a jury that the officers falsified the very reports that led to [plaintiff's] conviction would cast doubt on that conviction");  *Sealy v. Fishkin*, No. 96 CV 6303(RR), 1998 WL 1021470, at * 4 (E.D.N.Y. Dec. 2, 1998) (by a guilty plea, plaintiff necessarily acknowledged that he was engaged in some unlawful activity for which the police could properly take him into custody.).

Even if Mr. Kaplan could meet the favorable termination element, another necessary component of his Fourth Amendment claim is the absence of probable cause.  Whether

described as false imprisonment, false arrest, or malicious prosecution, Mr. Kaplan's claim under the Fourth Amendment would hinge on the same analysis: whether or not probable cause existed.  *See Grubbs v. Bailes*, No. 05-7076, 2006 WL 1086440, at *2 (10th Cir. April 26, 2006) (while the starting point for Fourth Amendment analysis may be analogous common law torts, "the focal point of our analysis is the probable cause supporting plaintiffs' arrest . . . .").  Mr. Kaplan's Fourth Amendment claim must fail because his conviction by a jury on all charges establishes probable cause.  *See Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (plaintiff required to prove absence of probable cause for prosecution to support a claim for malicious prosecution brought pursuant to *Bivens*);  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest");  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (constitutionality of a warrantless arrest is analyzed under probable cause standards);  *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1249 (D. N.M. 2010) ("To establish a malicious-prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause.") (citation omitted);  *Gouskos v. Griffith*, No. 03-5133, 122 Fed. Appx. 965, 972, at * 6 (10th Cir. 2005) ("Likewise, if the false arrest plaintiff is convicted in the criminal trial for the acts for which he was arrested, probable cause for his arrest is conclusively established and precludes a subsequent civil action for false arrest.");  *Husbands v. City of New York*, No. 07-3657-cv, 335 Fed. App'x. 124, 128 (2d Cir. 2009) (existence of probable cause defeated plaintiff's claim for false arrest and malicious prosecution);  *Feurtado v. Gillespie*, No. 04CV3405NGGLB, 2005 WL 3088327, at *6 (E.D.N.Y. Nov. 17, 2005) (an examination of the totality of the circumstances known to the officer at the time of arrest is not required if the plaintiff is convicted after trial on the underlying charge).

Mr. Kaplan also alleges violation of his Second Amendment rights.  (*See* Doc. # 19 at 26 of 43).  The Second Amendment guarantees "the individual right to posses and carry weapons in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The right is not unlimited.  *Id.* at 595.  *Heller* "did not change the notion that the right to bear arms has boundaries. The decision does not deal with statutes prohibiting possession or use of firearms in connection with criminal behavior."  *Angelos v. United States*, No. 2:07-CV-936-TC, 2009 WL 3261953, at * 4 (D. Utah Oct. 7, 2009).  Mr. Kaplan was convicted of having a firearm in his possession in connection with criminal behavior, that is, while under the influence of intoxicating liquor.  He does not allege that he was otherwise thwarted of his right to bear arms.  The allegations in the FAC do not state a claim for relief under the Second Amendment.

In sum, Mr. Kaplan fails to state a claim upon which relief can be granted for violation of violation the Second, Fourth, Sixth, Seventh, Ninth, or Thirteenth Amendments.

3.     Criminal Statutes

Mr. Kaplan further appears to allege violations of criminal statutes.  (*See* Doc. # 19 at 1, 5-6 of 43) (Title 18 U.S.C. §§ 2071, 3332(a), 1957(a), 666).  To the extent that Mr. Kaplan alleges violation of criminal statutes, he does not state a cognizable claim for relief.  *See Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991) ("Criminal statutes cannot be enforced by civil actions");  *Martinez v. Ensor*, 958 F. Supp. 515, 518 (D. Colo. 1997) ("Generally, private citizens have no authority to institute a federal criminal prosecution"); *Bass Angler Sportsman Society v. United States Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971) (recognizing "the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions").

4.     Conspiracy under Title 42 U.S.C. §§ 1985, 1986

Mr. Kaplan further seems to allege a conspiracy under §§ 1985 and 1986.  (*See* Doc. # 19 at 23 of 43).  Section 1985 outlaws various classes of conspiratorial activity.  *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  Section 1985 proscribes any conspiracy to: (1) prevent

an officer from performing duties; (2) obstruct justice, or intimidate a party, witness or juror; and (3) deprive persons of rights or privileges.  To state a claim under § 1985, a plaintiff must show: (1) a conspiracy, motivated by racially discriminatory animus; (2) to deprive plaintiff of equal protection of the constitution or laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom.  *Tilton*, 6 F.3d at 686.

Mr. Kaplan's allegations are insufficient to state a conspiracy claim.  *See, e.g., Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.").  *See also Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) ("The participants in the conspiracy must share the general conspiratorial objective . . . [t]o demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences.") (internal quotation marks and citation omitted).  Mr. Kaplan argues that "[t]he conspiratorial silence of all Defendants is the action which the instant complaint arises from, . . . ." (*See* Response (Doc. # 30) at 10 of 16; Transcript of hearing held October 21, 2011 (Doc. # 28) at 6 of 14).  Mr. Kaplan has provided no facts to support even an inference that some plan or joint action existed between any of the Defendants.  *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice.").  Nor has Mr. Kaplan alleged any racial or class-based discriminatory animus.  *See Daigle v. Gulf State Utilities Co., Local No. 2286*, 794 F.2d 974, 978-79 (5th Cir. 1986) (§ 1985(2) and (3) require some class-based invidiously discriminatory animus behind conspirators' actions).  As Mr. Kaplan has made nothing more than a conclusory and vague allegation of a conspiracy, his claim is properly dismissed for failure to state a claim upon which relief can be granted.  *See Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) ("[C]onclusory allegations that

defendants acted in concert, or conspired without specific factual allegations to support such assertions are insufficient.") (internal quotation marks and citation omitted);  *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997) (Where a complaint contains merely conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights, it must be dismissed.") (citations omitted).

Since a § 1986 claim is premised upon the existence of a valid § 1985 claim, any § 1986 claim Mr. Kaplan brings also fails.  *See Wright v. No Skiter Inc.*, 774 F.2d 422, 426 (10th Cir.1985) (claim under § 1986 "depends on the existence of a valid claim under § 1985"). *See also Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.1983) ("Section 1986 depends on the existence of a claim under § 1985.");  *Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir.1972) ("Because of a failure to establish any § 1985 right, the interrelated, dependent cause of action under Section 1986 was also correctly dismissed.").


Accordingly, IT IS RECOMMENDED that:

1.     The "Motion to Dismiss First Amended Complaint by Defendants Hickenlooper, Suthers, Trujillo, Samelson, Hansen, Butts, and Archer" ("State Defendants") (filed December 14, 2011) (Doc. # 23) be GRANTED.

2.     The "Motion to Dismiss Plaintiff's First Amended Civil Complaint . . ." filed by Defendants Maketa and May ("County Defendants") on December 14, 2011 (Doc. # 25) be GRANTED.

3.     This civil action be dismissed in its entirety.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th

Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 3rd day of July, 2012.

BY THE COURT:


 s/ Craig B. Shaffer
United States Magistrate Judge